Henry GAILEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

April 19, 1974.

Anthony M. Wilhoit, J. Vincent Aprile, II, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., Robert W. Riley, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

The appellant, Henry Gailey, was indicted for killing John Noe and wounding John Noe's son, Bert Noe. The jury found Gailey guilty of manslaughter for the killing of John Noe and fixed his punishment at fifteen years' confinement in the penitentiary; the jury also found him guilty of maliciously shooting and wounding Bert Noe and for this offense fixed his punishment at two years' confinement in the penitentiary. Both the appellant and the Commonwealth agree that the trial court ordered the sentences to be served concurrently. Appellant asserts prejudicial error occurred when the trial judge refused to direct a verdict in his favor and also when the trial judge denied him the right to cross-examine Clara Lumpkins, a codefendant. We are unpersuaded that prejudicial error warranting a reversal was committed in either instance.

The appellant Gailey and two friends drove to Clara Lumpkins' house. Gailey took his pistol with him into her house because, he said, he wanted to prevent its possible theft from his car. Shortly after the three arrived at the Lumpkins house, the decedent, John Noe, his son, Bert Noe, and a third man also arrived and joined the others. According to the evidence, all of the men, along with Clara Lumpkins and her daughter Rita, then started dancing and drinking and "fooling around."

The evidence is contradictory concerning what happened next. It appeared that Bert Noe and Gailey had an argument, but each accused the other of being the aggressor. Gailey said that John Noe came from another room holding a knife in his hand while the argument was in progress. According to Bert Noe, the argument began again and Gailey "took a swing at him." Bert Noe said that he then knocked Gailey down and began to hit him with his fists; at this point John Noe begged his son to let Gailey up. Bert said he complied with his father's entreaties. Also, according to Bert Noe, when he and Gailey got up, Gailey produced a pistol and shot him in the right leg. Whereupon, he called out to his father that he had been shot, and the father began to move toward him from across the room. At this point Gailey wheeled and shot John Noe and then turned back to Bert Noe and shot him again hitting him in the left leg. According to the prosecution's evidence, Gailey then turned again toward the elder Noe and shot him a second time. As a result of this, John Noe staggered out the front door and fell off the porch. He died as a result of his wounds.

Trooper Bill Riley investigated the shooting. Clara Lumpkins made a written statement that after Bert Noe and Gailey began to fight she got her gun and "just started shooting." She was indicted as an accessory after the fact. Gailey and Clara Lumpkins were tried together. Gailey claimed self-defense. He testified that Bert Noe precipitated the original disagreement at which time John Noe appeared with a knife. Gailey said he was afraid for his life and that John Noe "had been in trouble" and "murdered one or two."

At the trial, Trooper Riley read Clara Lumpkins' statement to the jury. Clara testified in her own defense and was examined by her attorney and cross-examined by the Commonwealth's attorney. Although she contradicted her previous statement concerning her use of a pistol on the occasion and stated that she did not see the whole affray, she undertook to bolster Gailey's self-defense plea by testifying that she did see a knife in John Noe's hand immediately before he was shot. Neither her direct examination nor her cross-examination incriminated Gailey in any particular. When Gailey's counsel undertook to ask a leading question in his cross-examination of her the prosecutor objected, and the trial judge admonished the cross-examiner not to ask leading questions. When Gailey's counsel made a general objection to that ruling, the trial judge stated: "Your purpose is just as direct." Gailey's counsel then proceeded with his examination of the witness and elicited from her additional favorable testimony directly supporting Gailey's self-defense plea.

Gailey argues that he was entitled to a directed verdict because all of the evidence indicated that his plea of self-defense was conclusively established. In Wheeler v. Commonwealth, 472 S.W.2d 254 (1971), we considered when a directed verdict of acquittal is required where the defendant relies on a plea of self-defense. In *Wheeler* we were confronted with another instance of a killing during the course of a drinking party.

From the total evidence in this case, we find that a jury could reasonably infer that one or more of the several elements that qualify or enter into the conclusive establishment of the legal right of self-defense were missing as was also true in *Wheeler*. Among those elements are the reasonableness of the defendant's belief of imminent danger of great bodily danger or loss of life and the character of the reasonableness of the judgment of the necessity to shoot four times to avert that danger. Under the circumstances related by the contradictory evidence, we think the trial court properly submitted the issue of the credibility and acceptability of the plea of self-defense to the jury for its determination.

Although the Public Defender in his brief in behalf of appellant directly asserts that the right of cross-examination was denied by the trial judge, the record establishes that this assertion is simply not true. Clara Lumpkins was the converse of a hostile witness so far as Gailey was concerned. Gailey admitted the killing and the wounding and undertook to excuse his conduct by the claim of self-defense. Clara Lumpkins testified in her own behalf and as a codefendant with Gailey. Nothing in her testimony even remotely incriminated Gailey in any particular, but she surely supported his plea of self-defense. If Gailey's attorney's examination of her could truly be described as "cross" examination, then, ordinarily, leading questions are allowable. Assuming then that the trial judge's action in directing the examining attorney not to ask leading questions was error, we nevertheless, find no indication preserved in the record that Gailey was in any way prejudiced.

The right to confront any witness and elicit evidence from him and to contradict and impeach him is in the essence of due process, a constitutional right. The right to ask leading questions in appropriate circumstances, however, is actually an interrogation technique and is not of constitutional proportions.

In Chambers v. State, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), on which appellant's brief so strenously relies, a completely different problem was involved. Chambers was indicted and tried for murder by the state of Mississippi. Another man, named McDonald, made, but later repudiated, a written confession of the murder for which Chambers stood accused. McDonald also orally admitted the killing on three separate occasions, each time to a different friend. At Chambers' trial, the prosecution did not call McDonald as a witness. When Chambers attempted to call McDonald as a defense witness and elicit testimony from him and impeach and contradict him, the attempt failed because of the combined effect of two rules of Mississippi law. The first rule applied by the trial court was the Mississippi "voucher" rule that a party could not impeach his own witness. The applicable rule in Kentucky is the direct converse. CR 43.07. In our jurisdiction, a witness may be impeached by any party without regard to what party produced him. The second rule applied to Chambers' detriment was that the proffered testimony of the three persons to whom McDonald, spontaneously and as a close acquaintance, confessed was inadmissible in evidence because it was hearsay. The Supreme Court regarded the application of the "voucher" rule as error but refused to reverse on that ground alone. The hearsay ruling was also declared error, and the combination of these errors was determined to have resulted in a denial of due process.

In the case sub judice, Gailey had ample opportunity to elicit testimony, confront all witnesses, impeach and contradict any witness, and there is no complaint of the exclusion of any relevant evidence. None of the determinative elements in *Chambers* is present. We find no significant impingement of a basic constitutional right.

The judgment is affirmed.

All concur.